## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| O CENTRO ESPIRITA BENEFICENTE UNIAO DO VEGETAL IN THE U.S., JOSE CARLOS GARCIA, DANIELLE HOUNSELL SILVA GARCIA, and J.H.S.G., a minor,<br><br>      Plaintiffs,<br><br>    v.<br><br>CHAD WOLF, Acting Secretary of Homeland Security; DEPARTMENT OF HOMELAND SECURITY, an agency of the United States; KENNETH T. CUCCINELLI, Acting Director of U.S. Citizenship and Immigration Services; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the United States; WILLIAM P. BARR, U.S. Attorney General; CHRISTOPHER WRAY, Director of FBI; FEDERAL BUREAU OF INVESTIGATIONS, an Agency of the United States, MIKE POMPEO, U.S. Secretary of State; U.S. DEPARTMENT OF STATE, an Agency of the United States,<br><br>      Defendants. | Case No.: 19-cv-1211 |

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND WRIT OF MANDAMUS

1.      This is not the first time the Government seeks to infringe upon Plaintiffs' fundamental right to practice their religion, guaranteed to them by the First Amendment to the U.S. Constitution and by statute. In 2006, the Supreme Court held that the Government failed to demonstrate a compelling interest in barring Plaintiff O Centro Espirita Beneficente Uniao Do Vegetal (hereinafter "UDV") from the sacramental use of hoasca tea, which contains a controlled substance. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

1

2.      In 2017, a federal judge for the District of New Mexico found that Plaintiffs had met the heightened standard for preliminary injunction, and ordered the Government to reopen Plaintiff Jose Carlos Garcia's erroneously denied R-1 Religious Worker Petition and adjudicate his delayed immigrant visa petition in accordance with the Religious Freedom and Restoration Act of 1993 (RFRA). *O Centro Espirita Beneficente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239 (D. N.M. 2017). In both of Plaintiffs' previous cases against the Government, Plaintiffs' prevailed and the Government was ordered to pay attorneys' fees and costs.

3.      Despite court rulings for Plaintiffs in these previous cases, the Government continues to infringe upon their fundamental religious freedom. Defendant USCIS has now failed to adjudicate multiple applications for Plaintiff Jose Carlos Garcia and his family, causing them and UDV to suffer irreparable harm.

4.      Plaintiffs, UDV, Jose Carlos Garcia, Danielle Hounsell Silva Garcia, and J.H.S.G., respectfully submit this complaint to compel Defendants and those acting under them to take all appropriate action to adjudicate Plaintiff Jose Carlos Garcia and his family's applications for Adjustment of Status, Travel Document (Advance Parole), and Employment Authorization Document (Forms I-485, I-131, and I-765) without further delay.  Plaintiffs properly filed the above referenced applications with Defendant U.S. Citizenship and Immigration Services ("USCIS") on January 05, 2018. Plaintiffs' applications remain within the jurisdiction of Defendants, who have improperly withheld action on the applications for an unreasonable period of time, to the detriment of Plaintiffs. Plaintiffs filed Forms I-131 and I-765 with USCIS on March 22, 2019 in order to renew previously granted applications. Plaintiffs' applications remains within the jurisdiction of Defendants, who have improperly withheld action on the application for an unreasonable period of time, to the detriment of Plaintiffs.

2

5.     The refusal to adjudicate these petitions is impinging upon the practice of their

religion and is causing other irreparable harm to the individual plaintiffs and to the organization

since Plaintiff Garcia is unable to travel outside the United States to attend important religious

meetings. As a result, Plaintiffs are concurrently filing a motion for a Preliminary Injunction.

## JURISDICTION AND VENUE

6.   This is a civil action brought pursuant to 28 U.S.C. § 1361 ("The district courts shall

have original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the

plaintiff."). Jurisdiction is further conferred by 8 U.S.C. § 1329 (jurisdiction of the district

courts) and 28 U.S.C. § 1331 (federal subject matter jurisdiction).

7.   Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b) and 702, the

Administrative Procedure Act ("APA"). The APA requires USCIS to carry out its duties

within a reasonable time. 5 U.S.C. § 555(b) provides that "[w]ith due regard for the

convenience and necessity of the parties or their representatives and *within a reasonable*

*time*, each agency *shall* proceed to conclude a matter presented to it." (Emphasis added).

USCIS is subject to 5 U.S.C. § 555(b). *See Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir.

2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C.

§ 1331, to review plaintiff's complaint for declaratory and injunctive relief against federal

agency). When the statute is silent as to an actual deadline to adjudicate an application or

petition, the agency is subject to the general reasonableness requirements of the APA. *Forest*

*Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir.1999).

8.   8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(5)

provides that "a petition for review filed with an appropriate court of appeals in accordance with

this section, shall be the sole  and exclusive means for judicial review of an order of removal entered or issued under  any provision of this Act[.]"  As the present action does not seek review  of a removal  order, but is simply an action to compel USCIS to adjudicate Plaintiff's unreasonably  delayed application, this Court retains original mandamus jurisdiction under 28 U.S.C. §  1361.

9.   Furthermore, 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review  either (i) "any judgment regarding the granting of" various forms of relief from removal,  or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney  General or the Secretary of Homeland Security[.]"  Because adjudication of Plaintiffs' properly filed applications for adjustment of status, employment authorization, and a travel document,  is neither a  judgment regarding  the granting  of  relief from removal nor a decision or action that is specified to be in the discretion of the  Attorney  General or the Secretary  of Homeland Security, the Court retains original  mandamus jurisdiction over this claim.  *See Kim v. USCIS,* 551 F.Supp.2d 1258 (D. Colo. 2008); *Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) (holding that "the Court does have jurisdiction over plaintiff's APA claim that defendants have  unreasonably delayed adjudicating his application" for adjustment of status); *Villa v. U.S. Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 366 (N.D.N.Y. 2009) ("[T]he Defendant has the discretionary power to grant or deny applications, but it does not have  the discretion as to whether or not to decide at all."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 739 (E.D. Va. 2008) ("[T]he Court retains jurisdiction under the APA to determine whether the Secretary [of Homeland Security] has unlawfully delayed or withheld final adjudication of a status adjustment application."). Numerous federal district courts have  ruled

4

that adjudication of a properly filed adjustment of status application, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Government is under obligation to perform in a timely manner. *See, e.g.*, *Shahid Khan v. Scharfen*, 2009 U.S. Dist. LEXIS 28948 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008); *Jones v. Gonzales,* Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

10. Both the regulations and the Immigration and Nationality Act provide numerous examples of duties owed by USCIS in the adjustment of status process. 8 U.S.C. § 1103 provides that "[t]he Secretary of Homeland Security *shall* be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens[.]" (Emphasis added). The Code of Federal Regulations provides that "[e]ach applicant for adjustment of status . . . *shall* be interviewed by an immigration officer." 8 C.F.R. § 245.6 (emphasis added). The regulations further provide that "the applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i) (emphasis added). The language of the statute and the above-cited regulations is mandatory, not discretionary, and the Defendants have a clear duty to adjudicate the applications for adjustment of status pending before them. *See Matter of Sealed Case,* 151 F.3d 1059, 1063 (D.C. Cir. 1998); *see also First Federal Savings and Loan Association of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988).

11. Additionally, both the regulations and the Immigration and Nationality Act provide numerous examples of duties owed by USCIS in the benefit application process. 8 U.S.C. §

5

1103 provides that "[t]he Secretary of Homeland Security *shall* be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens[.]" (Emphasis added). The regulations further provide that "If the application is granted, the alien shall be notified of the decision and issued an employment authorization document valid for a specific period and subject to any terms and conditions as noted. If the application is denied, the applicant shall be notified in writing of the decision and the reasons for the denial." 8 C.F.R. § 274a.13(b)-(c). The language of the statute and the above-cited regulations is mandatory, not discretionary, and the Defendants have a clear duty to adjudicate the applications for employment authorization and travel document pending before them.

12. As set forth below, the delay in processing the Plaintiffs' properly filed applications for adjustment of status, employment authorization, and a travel document is unreasonable.

13.     Venue is proper in the District of New Mexico pursuant to 28 U.S.C. §1391(e)(1)(C). Plaintiff sues the Defendants in their official capacities as officers and employees of the United States. Plaintiff UDV is a New Mexico corporation and is headquartered/resident in Santa Fe, NM, in the District of New Mexico.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. No exhaustion requirements apply to the Plaintiffs' complaint. The Plaintiffs are owed a duty – the adjudication of their properly filed applications for adjustment of status, employment authorization document, and travel document, which have been duly filed with USCIS. Defendants have unreasonably delayed and failed to adjudicate Plaintiffs' applications for adjustment of status for almost two years. Defendants have unreasonably delayed and failed

to adjudicate Plaintiffs' applications for employment authorization and a travel document for almost nine months.  Plaintiffs have  no other  adequate  remedy  available  for  the  harm  they seek  to  redress  –  the  failure  of  USCIS to process their applications in a timely manner.

## PARTIES

15. Plaintiff UDV is a New Mexico corporation and a nonprofit religious organization duly recognized by both the IRS and the United States Supreme Court. UDV is a Christian Spiritist religion that originated in Brazil and is now practiced by close to 20,000 people in 11 countries. UDV has received numerous civic awards for its community and environmental service.

16. Plaintiff Jose Carlos Garcia is a resident of Florida and a minister of UDV. He holds a high position in the organization, akin to a Cardinal of the Catholic Church. Plaintiff Garcia has been leading the Church's Florida congregation since 2013 and remains part of an administrative counsel that oversees all the other congregations in North America. In addition to being part of the General Administration of UDV, he is also assigned to the post of General Assistant Mestre, responsible for monitoring and supervising activities at an international level. His position requires regular international travel to supervise activities in the 10 countries outside of Brazil with UDV congregations. Plaintiff Garcia was granted R-1 nonimmigrant religious worker status three time by Defendants. His third petition was first erroneously denied by Defendant USCIS, who then reopened and approved the petition in accordance with a court order from a federal judge in the District of New Mexico. Plaintiff Garcia's I-360 immigrant visa petition was also approved in accordance with the same court order. He has now been waiting almost two years for his adjustment of status application to be approved. In the meantime, his work permit and travel documents expired and he is not able to travel outside of the country on important Church

business. He applied to renew his work permit and obtain a travel document in a timely manner, but Defendants have also unreasonably delayed the adjudication of those applications, leaving him in limbo.

17. Plaintiff Danielle Hounsell Silva Garcia is Plaintiff Jose Carlos Garcia's spouse, and therefore the derivative beneficiary of his visa petition. Ms. Silva Garcia is a civil servant of the federal government of Brazil, and she took leave for 6 years to accompany her husband on his important religious duties in the U.S. Ms. Silva Garcia also filed for adjustment of status almost two years ago, and for a work permit and travel document nine months ago. Defendants have unreasonably delayed adjudication of her application. Ms. Silva Garcia needs to personally return to Brazil to ensure she is able to receive retirement from her civil service petition but is unable to do so unless Defendant USCIS adjudicates her applications.

18. Plaintiff J.H.S.G. is Plaintiff Jose Carlos Garcia's minor son and therefore the derivative beneficiary of the visa petition filed by UDV. Plaintiff J.H.S.G. also filed for adjustment of status almost two years ago, and for a work permit and travel document nine months ago. Defendants have unreasonably delayed adjudication of his applications.

19. Defendant Chad Wolf is the Acting Secretary of the Department of Homeland Security (DHS), and as such is charged by statute with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens.  He is sued in his official capacity only.

20. Department of Homeland Security (DHS) is an agency of the United States in charge of reviewing and deciding benefit applications including applications for adjustment of status, work authorization, and travel permits such as the ones filed by Plaintiffs.

21. Defendant Kenneth T. Cuccinelli is the Acting Director of United States Citizenship and Immigration Services (USCIS) of the DHS and as such is charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens pursuant to a delegation of authority from the Secretary of Homeland Security of the United States under 8 U.S.C. § 1103(a).  He is sued in his official capacity only.

22. United States Citizenship and Immigration Services (USCIS) is an agency of the United States (under DHS) in charge of reviewing and deciding benefit applications including applications for adjustment of status, work authorization, and travel permits such as the ones filed by Plaintiffs.

23. Defendant William P. Barr is the Attorney General of the United States.  He is charge of the Federal Bureau of Investigations (FBI) which, in turn, is in charge of conducting background checks for applicants such as the ones filed by Plaintiffs.  He is sued in his official capacity only.

24. Defendant Christopher Wray is the Director of the FBI.  He is the head of the agency in charge of conducting background checks for applicants of immigration benefits.  He is sued in his official capacity only.

25. Defendant FBI is an agency of the United States in charge of conducting background checks for the applications filed by Plaintiffs.

26. Defendant Mike Pompeo is the Secretary of State, and as such is charged by statute regarding visa issuance to aliens including visa numbers for adjustment of status applications adjudicated by USCIS.  He is sued in his official capacity only.

27. United States Department of State is an agency of the United States in charge of issuing visas including visa numbers for adjustment of status applications adjudicated by USCIS.

28. Defendants are in charge of the processing and adjudication of applications and related background checks for the applications filed by Plaintiffs.

## **LEGAL FRAMEWORK**

<u>RFRA</u>

29. The Religious Freedom and Restoration Act of 1993 (RFRA) forbids the Government from substantially burdening the exercise of religion unless it can meet the RFRA exceptions. RFRA § 3, 42 USC §2000bb-1(2006), provides as follows:

> Free Exercise of religion protected
> (a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
> (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person –
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest

<u>R-1 Religious Worker</u>

30. 8 C.F.R. § 1101(a)(15)(R) provides the statutory authority for the R visa used by nonprofit, religious organizations to allow their ministers to serve their flocks. It provides as follows:

> (R) an alien, and the spouse and children of the alien if accompanying or following to join the alien, who –
> (i) for the 2 years immediately preceding the time of application for admission has been a member of a religious denomination having a bona fide nonprofit religious organization in the United States; and
> (ii) seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph (27)(C)(ii);

31.  The regulations implementing the statute require that a petitioning organization either compensate the minister, or show that it has an established missionary program where ministers are self-supporting. 8 C.F.R. § 214.2(r)(11). Defendants relied upon the compensation requirement to delay and deny Plaintiffs' previous petitions, but the issue has already been decided in Plaintiffs' favor. For organizations such as Plaintiff UDV that have non-compensation of ministers as a central tenant of their faith, this requirement is a substantial burden on their religious practice and a violation of RFRA. Defendant USCIS granted exemptions to Plaintiff Garcia's R-1 application on this ground, three different times. The third time, a federal court order from the District of New Mexico mandated that the compensation requirement was likely a violation of RFRA and ordered USCIS to re-open and reconsider Plaintiffs' application in accordance with the law. *O Centro Espirita Beneficente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239 (D. N.M. 2017). If this is the reason why the currently pending applications are being delayed, the position of the government not only would be unfounded and contrary to law, but it would fly in the face of Judge Browning's decision. *Id.*

Adjustment of Status

32. Foreign nationals who meet the requirement of 8 U.S.C. § 1255(a) or (i) may apply to have their status adjusted to that of a lawful permanent resident.

33. Either process requires a background check conducted by the FBI. Applicants submit their fingerprints at designated offices of Defendant USCIS.

34. Adjustment of Status is an application that is typically filed in conjunction with a visa petition such as the I-130 Religious Worker petition in this case.  The immigration category for religious workers is limited in numbers and only a certain number of applicants are accepted and approved each fiscal year.

11

35. The Department of State is in charge of accounting for and distributing these visa numbers to its consular posts and to USCIS as cases come up for adjudication. The Department of State issues a monthly visa bulletin which contains the cutoffs and visa availability for each category. During the course of adjudication of applications for adjustment of status, a USCIS officer who is adjudicating the application requests a visa number from the Department of State. This number is issued <u>before</u> final adjudication.  Without this number, there can be no approval of the application for adjustment of status.  Once the number is issued it can remain with the case for the remainder of the fiscal year so the case can be adjudicated.  This means that so long a number was issued, even if the category is unavailable, the case can still be adjudicated.

Employment Authorization

36. An applicant for adjustment of status falls within the class of aliens who have a right to an employment authorization document (EAD). 8 C.F.R. § 274a.12(c)(9).

37. Until January 2017 USCIS was obligated to adjudicate these applications within 90 days.  8 C.F.R. § 274a.13(d) (effective prior to January 2017).  USCIS amended its regulation and eliminated the 90 day deadline despite multiple public comments to the contrary.  However, even though an explicit deadline is no longer available, the APA reasonableness standard remains.  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir.1999).

Advance Parole

38.  Advance parole is one of the types of travel documents available to applicants who have a Form I-485, Application to Adjust Status, pending and need to travel outside of the country. Parole must be sought in advance of travel to allow an applicant for adjustment of status to leave without abandoning their application and re-enter the United States. 8 C.F.R. § 212.5(f).

## FACTUAL AND PROCEDURAL BACKGROUND

39. In 2006 Plaintiff UDV won a Supreme Court case defending their religious right to use Hoasca tea in religious ceremonies. The Supreme Court held that the Government failed to demonstrate a compelling interest in barring UDV's sacramental use of the tea. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

40. In 2017, Plaintiffs again had to sue the Government for a violation of their religious freedom under RFRA, and won a federal court case here in the District of New Mexico. Judge Browning ordered the Government to reconsider Plaintiff UDV's R-1 petition in accordance with RFRA, and to adjudicate Plaintiff UDV's pending I-360 petition in accordance with RFRA. *O Centro Espirita Beneficiente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239 (D. N.M. 2017).

41. Plaintiff UDV has a strongly held religious belief that ministers should not be monetarily compensated for their religious calling. The organization holds non-compensation of ministers as a central tenet of their faith. Defendant USCIS has challenged Plaintiffs' beliefs on this matter over and over again, causing them a substantial burden on their exercise of religion. Plaintiffs have refused to allow the Government to burden them in this manner, and have successfully fought and won the battle over every petition they have filed thus far. The current delay in adjudicating Plaintiffs' applications is just another attempt by the Government to burden their Constitutional and statutory right to exercise their religion.

42. Plaintiff UDV first filed an I-129 nonimmigrant R-1 visa petition for Jose Carlos Garcia on 12/16/2011. Though Defendant USCIS issued a request for evidence (RFE) and a notice of intent to deny (NOID) on the initial petition, it was ultimately approved on 11/27/2012. Defendant USCIS intended to deny the petition on the compensation issue, but ultimately

13

granted the petition after Plaintiff UDV requested an exemption to the compensation requirement under the RFRA. Plaintiff Garcia was admitted into the United States in R-1 status on 3/26/2013.

43. On 12/3/2014, Plaintiff UDV filed a second I-129 nonimmigrant visa petition for Plaintiff Garcia. Defendant USCIS again issued an RFE and NOID on the compensation issue, and Plaintiffs once again requested an exemption under RFRA. The second petition was approved on 12/16/2015.

44. On 7/1/2017, Plaintiff UDV filed an I-360 immigrant visa petition for Plaintiff Garcia. A NOID was issued by Defendant USCIS on 7/31/2017, again raising the compensation issue. This petition was pending for longer than USCIS's published processing times, and became the subject of federal court litigation. On 12/15/2017, a federal judge for the District of New Mexico found that Plaintiffs had met the heightened burden for injunctive relief, and granted their motion in part. The judge ordered that USCIS adjudicate Plaintiff Garcia's pending I-360 petition without applying 8 C.F.R. § 204.5(m)(10), because applying that regulation would likely violate RFRA. *O Centro Espirita Beneficente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239 (D. N.M. 2017). Plaintiff Garcia's I-360 was approved on 1/05/18. Exhibit 1.

45. Plaintiff UDV had also filed a third R-1 visa petition for Plaintiff Garcia on 7/17/2017. Unsurprisingly, the compensation issue was raised again. This time, in addition to raising the compensation issue, Defendant USCIS alleged that Plaintiff Garcia was a drug abuser because of the religious requirement that he use the sacramental Hoasca tea which contains a controlled substance. The Supreme Court held in 2006 that the government had no compelling interest in preventing UDV from using the sacramental tea. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Plaintiff UDV again responded to USCIS,

14

requesting a RFRA exemption for both the compensation issue and the use of the sacramental

tea. Defendant USCIS denied the petition on 10/31/2017, citing only the compensation issue.

46. This denied R-1 visa also became the subject of litigation, in the same federal court

case challenging the delay in adjudication of the I-360 petition. See *O Centro Espirita*

*Beneficiente Uniao do Vegetal v. Duke*, 286 F.Supp.3d 1239 (D. N.M. 2017). The federal judge

ordered USCIS to "reconsider the Plaintiffs' R-1 petition-with the Plaintiffs' requested date

modification-without applying 8 C.F.R. § 204.5(r)(11), because applying that regulation to the

Plaintiffs' R-1 petition likely violates RFRA." *Id*. at 1268. Plaintiff's third R-1 was reopened and

ultimately approved on 2/23/2018.

47. Plaintiff Garcia and his family applied for adjustment of status to become permanent

residents on 01/05/2018. Exhibit 2. At this time, their applications have been pending just days

shy of two years. They received an RFE on 06/03/2019, and timely responded on 08/03/2019.

Generally, when an RFE is issued, it means the petition is on an adjudicator's desk and a

decision can be expected in around 30-60 days after the response is received. The RFE itself said

that processing of the I-485 would resume upon receipt of the response, and to contact USCIS if

they had not responded within 60 days. Exhibit 3.

48. When an RFE response is received and the case is ready for adjudication is the time

when the USCIS officer in charge of the matter requests a visa number from Defendant

Department of State.  The visa bulletins issued by the Department of State show that there were

visa numbers available for Plaintiffs in the months of August 2019 when the RFE response was

submitted (submitted August 3, 2019) and November 2019 when Plaintiffs again inquired with

Defendants regarding the overdue applications.  Exhibit 4, visa bulletins for August 2019-

January 2020.  Defendant USCIS should have obtained a visa number from Defendant

Department of State in August or November or both since due to their inaction the August number may have gone unused by the end of the fiscal year on September 30.

49. It has now been four months since the RFE response, twice the typical processing time, and no decision has been issued. Defendant USCIS has published processing times of 10 to 20 months for Employment-based adjustment applications. Plaintiffs submitted an inquiry into their case status in November of 2019. They received a response to the inquiry acknowledging that the case was outside of normal processing times and stating that they were unable to provide a timeframe for when a decision would be issued. Exhibit 5. A response on Plaintiffs' application is at least three-four months overdue at this point even from the inflated 20-month processing time which is not the reality for the majority of applications. Exhibit 6. Upon information and belief, applications for adjustment of status in the jurisdiction where Plaintiffs reside typically takes around 1 year.

50. Plaintiff Garcia and his family applied for employment authorization with their adjustment of status applications on 01/05/2018. They were granted employment authorization on 05/10/2018, which expired on 05/09/2019. Exhibit 7. Plaintiff Garcia and his family applied to renew their work authorization on 03/22/2019, almost two months before their documents expired. Exhibit 8. At this time, their applications have been pending for almost nine months and their previous documents have expired. Defendant USCIS has published processing times for employment authorization based on pending adjustment applications. The published range is 3.5 to 5.5 months, and the published receipt date for case inquiry is 07/05/2019. Exhibit 9. Plaintiffs' employment authorization documents should have arrived at least five months ago. Plaintiff Garcia and his family are all eligible for work authorization based on pending applications for adjustment of status. The delay in adjudicating and issuing these documents is unreasonable.

51. Plaintiff Garcia and his family also filed Form I-131, applications for travel documents, on 03/22/2019. Exhibit 10. Plaintiffs are seeking advance parole so they can travel outside of the country on religious and personal business and return to the U.S. Defendant USCIS's published processing time for this type of petitions is 3.5 to 5.5 months, and the published receipt date for case inquiry is 07/05/2019. Exhibit 11. Plaintiffs' travel documents should have arrived at least five months ago.

52. Plaintiff Garcia's position requires travel to Brazil for church meetings and the failure to adjudicate his I-131 and other applications has prevented him from fulfilling his religious duties. Plaintiff Garcia has been unable to attend multiple important international meetings because Defendants did not timely adjudicate his petition. Exhibits 12. This document is necessary for Plaintiff Garcia and his family to be able to travel abroad. Plaintiff Garcia's inability to travel prevents him from practicing his religion and fulfilling his religious duties to UDV.

53. Plaintiff Garcia's inability to attend international meetings prevents him from fulfilling his obligations as General Assistant Mestre and causes irreparable harm to Plaintiff UDV. Plaintiff Garcia was chosen specifically for this high level position and his inability to perform his role interferes with Plaintiff UDV's ability to freely choose their religious leaders. Exhibit 13.

54. Plaintiff Garcia has three other children and six grandchildren in Brazil. The delay in adjudication of his applications has prevented him from traveling abroad to meet his youngest grandchild. He also suffers from health conditions that require regular travel to Brazil to see medical professionals. Exhibit 12.

55. Plaintiff Silva Garcia needs to travel to Brazil before the end of January 2020 or she is at risk of losing valuable retirement benefits earned by years of civil service to the government of Brazil. Exhibit 14.

56. Plaintiff Silva Garcia and her son J.H.S.G. need to be able to drive to accomplish daily tasks. They had drivers licenses for the state of Florida, but J.H.S.G's has already expired and Plaintiff Silva Garcia's will expire on 12/14/19. Exhibit 15. They are unable to renew their drivers licenses without proof that they have legal status to remain in the country.

## CAUSES OF ACTION:
## COUNT ONE

## VIOLATION OF 42 U.S.C. § 2000bb–1(a)–(b) (RFRA CLAIMS)

57. The allegations contained in paragraphs 1 through 56 above are repeated and re-alleged as though fully set forth herein.

58. Plaintiffs have a claim for relief under 42 U.S.C. § 2000bb–1(a)–(b). Defendants have substantially burdened Plaintiffs' exercise of religion and failed to meet either of the exceptions provided by RFRA.

59. Congress has expressly legislated that plaintiffs may sue federal agencies under RFRA, "a person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain relief against a government" 42 U.S.C. § 2000bb-1(c). Additionally, RFRA applies to "all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3(a).

60. RFRA provides a separate and distinct cause of action from the APA. *Northern Arapaho Tribe v. Ashe*, 925 F.Supp.2d 1206, 1211 (D. Wyo. 2012) ("Plaintiffs' claim here is not under the APA, it's under RFRA […]. RFRA provides Plaintiffs with a cause of action that is

separate from the APA.").  In addition to providing a separate cause of action, "RFRA also

provides a different standard of review of government action than the APA. Compare 42 U.S.C.

§ 2000bb–1(a)–(b) (2006) (reviewing whether government action substantially burdens a

person's religious exercise and whether the burden is justified by a compelling governmental

interest advanced via the least restrictive means), with 5 U.S.C. § 706(2)(A) (2006) (reviewing

whether agency action is arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." *Id., see also, O Centro Espirita Beneficiente Uniao do Vegetal v. Duke*,

286 F.Supp.3d 1239, 1259 (D.N.M. 2017) (providing a more extensive case law overview of

RFRA being a separate cause of action from the APA).

61. In this matter, Defendants have caused substantial burdening of Plaintiffs' sincere

exercise of religion through their unreasonable delays.  As a result, Plaintiffs are entitled to

injunctive relief, damages, and attorney's fees pursuant to 42 U.S.C. § 1988(b).

**COUNT TWO**

**RELIEF UNDER THE MANDAMUS ACT**

62. The allegations contained in paragraphs 1 through 56 above are repeated and re-

alleged as though fully set forth herein.

63. Plaintiff has a claim for mandamus relief under 28 U.S.C. § 1361 which provides the

authority to compel the agency to perform a duty owed to Plaintiffs.  Defendants have failed to

properly adjudicate Plaintiffs' applications for adjustment of status, employment authorization,

and travel documents.

64. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the

relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no

other adequate remedy is available. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002);

*Citizens for Ethics and Responsibility in Wash. v. Cheney*, 593 F. Supp. 2d 194, 219 (D.D.C. 2009); *see also Liu*, 509 F. Supp. 2d at 10 (holding, in mandamus suit alleging unreasonable agency delay, that ""'the statutory duty involved [in such cases] … does not specify what course of action shall be taken. Rather, regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice'") (quoting *Sierra Club v. Thomas*, 828 F.3d 783, 794 (D.C. Cir. 1987)); *Aslam*, 531 F. Supp. 2d at 743 ("[T]he Court concludes that CIS has a legal obligation to adjudicate Aslam's petition within a reasonable period of time."). The Plaintiff clearly meets all three of these criteria.

65. The Plaintiff has fully complied with all of the statutory and regulatory requirements, including submission of all necessary forms and supporting documents.

66. The Defendant USCIS has unreasonably failed to adjudicate the Plaintiffs' application to adjust status for almost two years, thereby depriving the Plaintiffs of their rights under 8 U.S.C. § 1255. Pursuant to 5 U.S.C. §§ 555(b) and 702 (APA), "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." (Emphasis added).

67. The Defendants owe the Plaintiff a duty to adjudicate their applications, pursuant to the statute and its implementing regulations, and have unreasonably failed to perform that duty. See, e.g., *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (issuing writ of mandamus to preclude government defendant "from excusing its own delay" in complying with a clear statutory obligation). The Plaintiffs have no alternative means to obtain adjudication of their applications and their right to issuance of the writ is "clear and indisputable." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988); *see also Power*, 292 F.3d at 784; *Matter of Sealed Case*, 151 F.3d 1063 (holding that mandamus is

an appropriate remedy whenever a party demonstrates a clear right to have an action performed

by a government official who refuses to act and that no other adequate means to attain the relief

exist).

68. The Court's intervention is also appropriate because Defendants have failed to act

within a reasonable period of time. See, e.g., *Sierra Club*, 828 F.3d at 794 (holding that

"regardless of what course it chooses, the agency is under a duty not to delay unreasonably in

making that choice"); *Northern States Power*, 128 F.3d at 760 ("Given DOE"s repeated attempts

to excuse its delay … we find it appropriate to issue a writ of mandamus …."); *Liu*, 509 F. Supp.

2d at 9-10 (holding that the APA requires the government to act within a reasonable period of

time). The Plaintiffs have already waited almost two years for adjudication of their pending

adjustment of status applications, and over nine months for adjudication of their employment

authorization documents and travel documents, well beyond the agency's own published

processing timeframe for such applications. This is an unacceptable and unreasonable delay.

69. The Plaintiffs are entitled to action on their long-pending applications, because an

unreasonable amount of time has passed since the applications were filed. Defendants have failed

to carry out the adjudicative and administrative functions delegated to them by law, to the

ongoing harm and prejudice of the Plaintiff.

70. Defendants' delay is without justification and has forced the Plaintiffs to resort to this

Court for relief, and the Plaintiffs are entitled to attorney's fees pursuant to the Equal Access to

Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

## COUNT THREE

## DECLARATORY JUDGMENT

71. The allegations contained in paragraphs 1 through 56 above are repeated and re-alleged as though fully set forth herein.

72. Pursuant to 28 U.S.C. § 2201 et seq. the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree.

73. Defendants in this case have failed to reach a decision on Plaintiff Garcia and his family's application for adjustment of status.  This failure to act is against the law, has caused, and continues to cause harm to Plaintiffs.  Therefore issuance of a declaratory judgment that Defendants' lack of action is against the law and violates the APA is warranted.

74. Defendants in this case have failed to reach a decision on Plaintiff Garcia and his family's application for employment authorization documents.  This failure to act is against the law, has caused, and continues to cause harm to Plaintiffs.  Therefore issuance of a declaratory judgment that Defendants' lack of action is against the law and violates the APA is warranted.

75. Defendants in this case have failed to reach a decision on Plaintiff Garcia and his family's application for travel documents.  This failure to act is against the law, has caused, and continues to cause harm to Plaintiffs.  Therefore issuance of a declaratory judgment that Defendants' lack of action is against the law and violates the APA is warranted.

## COUNT FOUR

## VIOLATION OF 5 U.S.C. §§ 702, 704,706 (APA CLAIMS)

76. The allegations contained in paragraphs 1 through 56 above are repeated and re-alleged as though fully set forth herein.

77. Plaintiff has suffered a "legal wrong" or has been "adversely affected or aggrieved" by agency action. 5 U.S.C. & 702.  Plaintiff is aggrieved by agency action for which there is no other adequate remedy in court.  5 U.S.C. § 704.

78. Defendants' inaction is a violation of RFRA.

79. The inaction is arbitrary, capricious, and exceeds Defendants' statutory authority. 5 U.S.C. § 706(c)(2).  The delays are a violation of the APA which mandates that a decision be made in a timely manner.

## **PRAYER FOR RELIEF**

WHEREFORE, in view of the arguments and authority noted herein, Petitioner prays that the Court grant the following relief:

A.  Assume jurisdiction over the matter;

B.  Issue a declaratory judgment holding that Defendants' unreasonable delay in adjudicating the adjustment of status, employment authorization, and travel document applications is unlawful and contrary to law as it substantially burdens Plaintiffs' sincere exercise of religion.

C.  Order Defendants and those working under them to immediately adjudicate the pending applications for adjustment of status.

D.  If the applications for adjustments of status are not immediately approved, to order Defendants and those working under them to immediately adjudicate and issue employment authorization documents and travel documents for Plaintiff Garcia, his wife, and his minor son.

E.  Award damages in amounts to be proven at trial, including but not limited to actual damages, together with pre-judgment interest, costs, consequential damages, and other undetermined damages, all to be proven at trial.

F.  Award reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988(b), the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412, and

G.  Grant any and all further relief this Court deems just and proper.

Dated this 26th day of December 2019.

<u>/s/ Olsi Vrapi.</u>

Olsi Vrapi
Attorney for Plaintiffs
Noble & Vrapi, P.A.
5931 Jefferson St.. NE, Suite A
Albuquerque, NM 87109
Phone:  (505) 352-6660
Fax:  (505) 872-6120
olsi@noblelawfirm.com